UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| JAMIE COLE,<br><br>      Plaintiff,<br><br>v.<br><br>KENOSHA UNIFIED SCHOOL DISTRICT<br>BOARD OF EDUCATION,<br><br>      Defendant. | Case No. 14-CV-1546-JPS<br><br><br>ORDER |

  In this action, the plaintiff, Jamie Cole ("Cole"), claims that the Kenosha Unified School District Board of Education ("the District") violated the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), and Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* ("Rehabilitation Act").[1] (Docket #1). Specifically, Cole claims that the District unlawfully discriminated against her by failing to: (1) reasonably accommodate her disabilities (diabetes and major depression); and (2) engage in a constructive, interactive process to solve her long-term workplace issues.(Docket #1, #36; *Cole II* Docket #1). Cole also claims that the District retaliated against her for requesting accommodations and filing complaints to the EEOC about this allegedly discriminatory conduct. (Docket #1, #36; *Cole II* Docket #1).

---

[1] Initially, Cole filed the civil complaint in this case pursuant to an Equal Employment Opportunity Commission ("EEOC") right-to-sue letter dated September 15, 2014. (*See* Docket #1; Docket #15, Exs. 1-4). However, on September 3, 2015, Cole received another right-to-sue letter from the EEOC based on two additional EEOC complaints. (*See* Docket 15 at 1-2). Cole filed a separate civil action embodying the allegations underlying those two additional EEOC complaints. (*See Cole v. Kenosha Unified Sch. Dist. Board of Ed.*, Case No. 15-CV-01142 (filed Sep. 22, 2015)) [hereinafter *Cole II*]. Because all three of Cole's EEOC complaints involved the same series of allegedly discriminatory events that occurred from 2012-2014, the Court consolidated both of Cole's cases into the current action. (Docket #17).

Before the Court is the District's motion for summary judgment.[2] (Docket #25). Pursuant to Federal Rule of Civil Procedure 56, the District moves for judgment as a matter of law with respect to all of Cole's claims. (Docket #25). That motion is now ripe for adjudication. (Docket #27, #36, #40).

For the reasons described herein, the Court concludes that there are genuine issues of material fact that preclude the grant of summary judgment for the District; thus, the District's motion will be denied in its entirety (Docket #25).

1. BACKGROUND[3]

    1.1 The Parties

Cole began working for the District in 2006 teaching special education at Bradford High School. (Docket #36, Ex. 2 ¶ 1). Since that time, however, Cole has held both regular education and special education positions at various schools within the District, including Bradford High School, Indian Trail High School and Academy ("ITHSA"), Tremper High School, and Lincoln Middle School. (Docket #36, Ex. 2 ¶¶ 2-4; Docket #36, Ex. 2 ¶¶ 1-4). Cole has Type 1 diabetes, which she has been controlling since 2003, and major depression, which was diagnosed in 2010. (Docket #36, Ex. 3 ¶¶ 10-11).

---

[2]Cole has also filed an expedited motion to file a surreply. (Docket #46). As Cole correctly points out, the statements made by various employees of the District are admissible under Fed. R. Evid. 801(d). Moreover, Cole filed a sufficient declaration attesting to her medical conditions. (Docket #36, Ex. 1). Because summary judgment can be disposed of without Cole's surreply, however, the motion (Docket #46) will be denied.

[3]The facts will generally be taken from the parties' proposed findings of fact (Docket #26, #36, Ex. 2) and the parties' responses thereto (Docket #36 Ex. 3, #38, #39), unless otherwise indicated. Any disputes of fact will be noted accordingly.

The District encompasses the City of Kenosha, the Village of Pleasant Prairie, and the Town of Somers and is comprised of 23 elementary schools, 5 middle schools, 5 high schools, 5 charter schools, and 1 Head Start Child Development Center. (Docket #26 ¶ 2). It employs more than 1600 teachers among more than 2300 full-time equivalent employees. (Docket #26 ¶¶ 3-4).

1.2     Facts

The relevant time frame for this action is the 2012/2013 school year and the 2013/2014 school year. (Docket #1; *Cole II* Docket #1). However, because certain events from the 2011/2012 school year provide context for understanding the issues at play in this case, the Court will briefly address the relevant facts from that time period as well.

Cole transferred to Tremper High School to teach social studies for the 2011/2012 school year. (Docket #36, Ex. 2 ¶ 4). However, prior to the beginning of school, Cole realized that, as a non-air-conditioned school, Tremper High School was too hot for her diabetes. (Docket #36, Ex. 2 ¶ 5). Therefore, Cole submitted an accommodation request to the District seeking a transfer or reassignment to a "regular education [position] at an air-conditioned building" and "to be a stationary teacher." (Docket #39 ¶ 6). To support this request, Cole submitted a letter from her doctor that stated that she needed an "entire work environment to be adequately cool and ventilated and will require transfer if this cannot be accommodated." (Docket #39 ¶ 6). The District responded by transferring Cole to Lincoln Middle School to teach social studies. (Docket #36, Ex. 2 ¶ 7). Cole did not have to "compete" for that reassignment. (Docket #36, Ex. 2 ¶ 8).

In light of certain layoffs projected for the 2012/2013 school year, Cole participated in the District's "Arena" scheduling process in order to be placed into her 2012/2013 school year position. (Docket #26 ¶ 27). Due to

Cole's seniority and credentials, the only remaining jobs from which she could chose from within the Arena process for that year were special education positions. (Docket #26 ¶¶ 28-29). In light of these options, Cole began working at ITHSA—a building that has air conditioning—as a special education teacher for the 2012/2013 school year. (Docket #26 ¶¶ 30-32 ).

Shortly thereafter, in September of 2012, Cole met with Principal Dr. Beth Ormseth ("Dr. Ormseth") to discuss Cole's disability accommodations. (Docket #36, Ex. 2 ¶ 11). Among other things, Cole and Dr. Ormseth discussed: (1) transferring Cole out of special education due to stress; (2) moving Cole's office; (3) allowing Cole to use a refrigerator for insulin; and (4) consolidating Cole's classes onto a single level within the building. (Docket #37, Ex. 12). However, as there were no regular education positions currently open at ITHSA, Dr. Ormseth stated that Cole's request for reassignment out of special education "would be deferred to [human resources]." (Docket #36, Ex. 2 ¶ 12). Other than the transfer request, Cole admits that at this time Dr. Ormseth worked with to Cole to try and accomplish each requested accommodation. (Docket #26 ¶¶ 38-46).

Approximately two months later, however, Cole met with the District's Executive Director of Business Services Sheronda Glass ("Glass"), Dr. Ormseth, and Union Representative Juan Jimenez ("Jimenez") to discuss Cole's oustanding accommodation needs, which included having her classes arranged on the same floor, changing her Local Education Agency ("LEA") Representative, and transferring Cole to a regular education position. (Docket #26 ¶ 46). During that meeting, Glass again explained that there were no regular education positions available and that Cole's schedule could not be modified to confine her classes to a single room or floor based on students' needs and the effect on other teachers. (Docket #26 ¶ 48). Dr. Ormseth also

stated that the District would not change Cole's LEA Representative because the District did not find evidence that Cole's representative had bullied her.[4] (Docket #26 ¶¶ 49, 54).

As a result of this meeting, Cole began a period of administrative leave for thirty days. (Docket #26, Ex. 2 ¶ 13). However, the parties dispute the terms under which Cole began her leave. On the one hand, the District claims that Cole had stated that working was "too difficult for her," and that the leave was mutually agreed upon. (Docket #26 ¶¶ 59-60). On the other hand, Cole claims that she only stated that working without her requested accommodations was "much more difficult" and that she was told her supporting medical information was "invalid." (Docket #36, Ex. 3 ¶¶ 58-60). Though the parties agree that at least one of the goals of this administrative leave was to gather medical documentation to support Cole's accommodation requests, Cole claims that she was "surprised" by having to go on leave because in the past she was allowed to continue working while the District attempted to accommodate her. (Docket #39 ¶ 13).

The events that occurred after the meeting are also in dispute. Cole claims that she submitted four letters from various physicians and therapists attesting to her need for a regular education position. (Docket #36, Ex. 2 ¶ 15). The District argues that none of these letters sufficiently identified: (1) the specific accommodations needed to address Cole's medical conditions; and (2) the reasons or bases for the purported accommodations. (Docket #39

---

[4]The parties dispute the definition of an LEA Representative. (*Compare* Docket #26 ¶ 50 *with* Docket #36, Ex. 3 ¶ 50). However, this dispute is immaterial because Cole does not argue in her opposition to summary judgment that the District's handling of her LEA Representative situation constituted discrimination. *See Carroll v. Lynch*, 698 F.3d 561, 568 (7th Cir. 2012) (arguments not raised at summary judgment are waived).

¶ 16; Docket #26 ¶¶ 61-67). To that end, Cole again met with the District on December 13, 2014, to discuss these issues. (Docket# 36, Ex. 2 ¶ 16; Docket #26 ¶¶ 68-70). Though the parties dispute whether Cole actually agreed to the arrangement, it is undisputed that after the meeting Cole began a period of medical leave. (Docket #36, Ex. 2 ¶ 18; Docket #38 ¶¶ 71-72).

Thereafter, on December 18, 2012, Cole submitted another formal accommodation request, which included "reassignment to an honor or regular education teaching position or one in which is self-paced.…" (Docket #36, Ex. 2 ¶ 25). She also submitted a letter from her therapist, Jim Lucchesi, which referenced, among other things, the need for Cole to be "reassign[ed] to a mainstream classroom." (Docket #36, Ex. 2 ¶ 26). The District claims that this was the first time that they received documentation from a medical provider supporting Cole's request to transfer. (Docket #26 ¶ 74). Moreover, during this time, Glass and Kupka exchanged various emails stating that Cole's situation would "become a project" for the District and that it would "hold[] strong on this" despite "what medical loopholes [Cole] might explore." (Docket #36, Ex. 2 ¶¶ 28, 31).

After receiving the second accommodation request, Kupka responded on behalf of the District and stated that he was "unable to accommodate [Cole's] current requests." (Docket #39 ¶ 27). Cole thereafter wrote a follow-up email asking for clarification as to which requests the District was unable to accommodate.[5] (Docket #36, Ex. 2 ¶ 28). After the winter holiday, Kupka repeated the same conclusion: that the District was unable to provide Cole her requested accommodations. (Docket #36, Ex. 2 ¶ 29).

---

[5]The District claims that any purported delay in response was due to the winter holiday, which ended on January 3, 2013. (Docket #26 ¶ 29).

Next, Cole directed her therapist to write a third letter to the District. (Docket #36, Ex. 2 ¶¶ 27-34; Docket #26 ¶¶ 76-77). This January 8, 2013 letter, however, did not reference reassignment. (Docket #36, Ex. 2 ¶¶ 27-34; Docket #26 ¶ 82).

On January 15, 2013, Cole met with Kupka, Dr. Ormseth, and Jimenez to discuss the accommodations proposed by Cole. (Docket #26 ¶ 84). During that meeting, the parties established an accommodation plan for Cole which did not include reassignment to a regular education position. (Docket #26 ¶ 85). Cole returned to work the next day. (Docket #36, Ex. 2 ¶ 37-38).

Cole had little contact with the District regarding her accommodations until the following school year. Then, just before the start of the 2013/2014 school year, the District held another meeting with Cole to discuss her pre-existing accommodation plan. (Docket #26 ¶ 94). Cole claims that she had inadequate notice of this meeting and was not offered the opportunity to secure union representation. (Docket #36, Ex. 3 ¶¶ 94-97). Cole did not express any issues with the accommodation plan. (Docket #39 ¶ 42).

Nonetheless, Cole claims that the District had continued to be aware of her requests to be removed from special education. (Docket #36, Ex. 2 ¶ 41; Docket #36, Ex. 3 ¶ 97). The District disputes this, and states that Cole's plan, along with her first accommodation plan made in January of 2013, enabled Cole to perform all of the essential functions of her job. (Docket #39 ¶¶ 41, 98; Docket #26 ¶90). Cole also claims that: (1) despite the District's purported knowledge of her outstanding desire to transfer, the District had failed to inform her of open positions for the 2013/2014 school year that matched Cole's accommodation request; and (2) the District failed to properly communicate with her thereafter. (Docket #36, Ex. 2 ¶¶ 42-45, 47). The District disputes that any available regular education openings existed, and

further claims that Cole did not express any interest in any position that may have been available for the 2013/2014 school year.[6] (Docket #39 ¶ 42).

Following the meeting, Cole submitted a fourth letter from Jim Lucchesi that outlined various accommodations for Cole's stress. (Docket #36, Ex. 2 ¶ 48). The parties dispute the extent to which the District responded to Cole following receipt of this document. (Docket #39 ¶¶ 50-54).

Cole then claims that she was informed of the need to submit a transfer request in order to be considered for a reassignment. (Docket #36, Ex. 2 ¶ 58). Cole submitted her request on January 10, 2014. (Docket #36, Ex. 2 ¶ 58). The parties again dispute whether the District properly responded to Cole's communications regarding the transfer. (Docket #39 ¶¶ 59-65).

On June 9, 2014, Cole met with Judy Rogers ("Rogers") and Rade Dimitrejevic to discuss two potential reassignment positions at Bradford High School and Lakeview Technology Academy. (Docket #26 ¶ 101). The District claims that it offered Cole these positions, which Cole rejected. (Docket #26 ¶¶ 102-107). Cole, however, states that: (1) the "offered" positions were not made unconditionally to her (Docket #38 ¶ 102); and (2) the District failed to suggest other potential teaching opportunities that were available (Docket #39 ¶ 70).[7] Moreover, though the District claims that Cole

---

[6]The parties also dispute whether the part-time nature of some of these positions and/or the qualifications that Cole had to teach certain subjects affected the District's decision not to offer Cole with certain reassignment options. (Docket #39 ¶¶ 42-45).

[7]At least one of these positions involved teaching a subject for which Cole had no license, economics. (Docket #39 ¶ 70). The parties dispute the ability and willingness of the District to obtain "emergency certifications" for teachers who are not certified, but are assigned, to teach regular education subjects. (Docket #39 ¶¶ 71-74). In addition, the parties dispute whether Cole had expressed a disinterest in transferring to a middle school. (Docket #39 ¶ 70).

rejected its offer to teach at Lakeview Technology Academy because it was a part-time position (Docket #26 ¶ 107), Cole claims that she did apply for the job, but was not hired. (Docket 38 ¶ 107). After the meeting, Rogers referred Cole to the District's WECAN website, which posted employment opportunities in the District. (Docket #38 ¶ 109). Rogers also referred Cole to the District's attorney for further questions. (Docket #38 ¶ 109).

On September 26, 2014, the District made a third reassignment offer to Cole to teach United States History to 9th graders at ITHSA. (Docket #36, Ex. 2 ¶ 83). Cole rejected that position. (Docket #36, Ex. 2 ¶¶ 84-85). She claims that she did not feel the position was suitable to her needs and would have forced her to displace a teacher in order to accept the job. (Docket #36, Ex. 2 ¶¶ 84-85). As a result of this alleged lack of accommodation, Cole's thoughts of hopelessness and suicide peaked in 2015, when she left school for the emergency room. (Docket #36, Ex. 2 ¶ 85).

2.  LEGAL STANDARD

When a party files a motion for summary judgment, it is their "contention that the material facts are undisputed and the movant is entitled to judgment as a matter of law." *Hotel 71 Mezz Lender LLC v. Nat. Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015) (citing Fed. R. Civ. P. 56(a)). "Material facts" are those facts which "might affect the outcome of the suit," and "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, to have a genuine dispute about a material fact, a party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 474 U.S. 574, 586 (1986); namely, the party in opposition

"must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

"Where…the movant is seeking summary judgment on a claim as to which it bears the burden of proof, it must lay out the elements of the claim, cite the facts it believes satisfies these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claims." *Hotel 71 Mezz*, 778 F.3d at 601. In analyzing whether summary judgment should be granted, a court must draw all reasonable inferences from the materials before it in favor of the non-moving party. *Id.* When a court denies a motion for summary judgment, it "reflects the court's judgment that one or more material facts are disputed or that the facts relied on by the motion do not entitle the movant to judgment as a matter of law." *Id.* at 602.

3. ANALYSIS

"Failure to accommodate is a form of ADA discrimination." *Hooper v. Proctor Health Care Inc.*, 804 F.3d 846, 851 (7th Cir. 2015) (citing 42 U.S.C. § 12112(b)(5)(A)). "In order to establish a prima facie ADA claim for failure to accommodate, a plaintiff must establish that: (1) the plaintiff is a qualified individual with a disability; (2) the employer was aware of the disability; and (3) the employer failed to reasonably accommodate the plaintiff's disability." *Dunderdale v. United Airlines, Inc.*, 807 F.3d 849, 853 (7th Cir. 2015).

"[T]he standard rule is that a plaintiff must normally request an accommodation before liability under the ADA attaches." *Jovanovic v. Emerson Elec. Co.*, 201 F.3d 894, 899 (7th Cir. 2000). Seventh Circuit case law has "consistently held that disabled employees must make their employers aware of any nonobvious, medically necessary accommodations with corroborating evidence such as a doctor's note or at least orally relaying a

statement from a doctor, before an employer may be required under the ADA's reasonableness standard to provide a specific modest accommodation the employee requests." *Ekstrand v. Sch. Dist. of Somerset*, 583 F.3d 972, 976 (7th Cir. 2009).

After an employee has disclosed that she has a disability, the ADA requires an employer to "engage with the employee in an 'interactive process' to determine the appropriate accommodation under the circumstances." *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 805 (7th Cir.2 005) (quoting *Gile v. United Airlines, Inc.*, 213 F.3d 365, 373 (7th Cir. 2000)). "[W]hile an employer's failure to engage in the interactive process alone is not an independent basis for liability, it is actionable 'if it prevents identification of an appropriate accommodation for a qualified individual.'" *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1062 (7th Cir. 2014) (internal citations omitted)*; see also Bultemeyer v. Fort Wayne Comm. Sch.*, 100 F.3d 1281, 1286 (7th Cir. 1996) (holding that an employer should have sought an explanation from the doctor if it had concerns with the employee's medical diagnosis). "When there is a communication breakdown, [courts] are required 'to isolate the cause of the breakdown and then assign responsibility.'" *Ekstrand*, 583 F.3d at 976 (internal citations omitted).

"[A] plaintiff/employee (to defeat a defendant/employer's motion for summary judgment) need only show that an 'accommodation' seems reasonable on its face, *i.e.*, ordinarily or in the run of cases." *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401 (2002). "Once the plaintiff has made this showing, the defendant/employer then must show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances." *Id.*

"[T]he ADA…mandate[s] that an employer appoint employees with disabilities to vacant positions for which they are qualified, provided that such accommodations would be ordinarily reasonable and would not present an undue hardship to that employer." *E.E.O.C. v. United Airlines, Inc.*, 693 F.3d 760, 761 (7th Cir. 2012). However, "there are significant limitations on an employer's potential obligation to reassign a disabled employee as reasonable accommodation." *Gile*, 95 F.3d at 499. "An employer may be obligated to reassign a disabled employee, but only to vacant positions; an employer is not required to 'bump' other employees to create a vacancy so as to be able to reassign the disabled employee. Nor is an employer obligated to create a 'new' position for the disabled employee." *Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 291 (7th Cir. 2015) (internal citations omitted); *see also Lasisi v. Follett Higher Educ. Grp., Inc.*, 598 F. App'x 437, 442 (7th Cir. 2015) (finding a defendant could be "liable for refusing to reassign [the plaintiff] because [the plaintiff] failed to justify the accommodation request with evidence of its necessity. Moreover, the record contain[ed] no evidence of a vacant position for which [the plaintiff] was qualified."). "[W]hen an employee requests a transfer…and the employer offers alternative reasonable accommodation, which the employee then refuses, the employer cannot be liable for failing to reasonably accommodate the employee by not transferring him to another position." *Gile*, 95 F.3d at 499.

"'The duty of reasonable accommodation is satisfied when the employer does what is necessary to enable the disabled worker to work in reasonable comfort.'" *Sears, Roebuck & Co.*, 417 F.3d at 803 (internal citations omitted). "An employer is not obligated to provide an employee the accommodation he requests or prefers, the employer need only provide some reasonable accommodation." *Gile*, 95 F.3d at 499.

At this juncture, there remains a significant number of disputed material facts in this case. As a threshold matter, the District states that it does not dispute the first and second elements of Cole's prima facie failure to accommodate claim. (Docket #27 at 6); *see also Dunderdale*, 807 F.3d at 853. However, based on the parties briefs, there does appear to be some dispute as to when the District's duty to accommodate Cole's disabilities attached. (*Compare* Docket #27 at 6 (stating that the District does not contest that it was "aware" of Cole's disabilities) *with* Docket #27 at 9 (explaining that as of November 8, 2012, the District was neither aware of the specific accommodations that Cole was requesting nor the specific reason for those accommodations) *and* Docket #36 at 19 (arguing that the District's duty to reassign the plaintiff attached as early as September of 2012)).

It is important to note here that Cole suffers from two disabilities, diabetes and major depression. (Docket #26 ¶¶ 10-11). And, the thrust of her failure to accommodate claim relates to the District's failure to reassign Cole to a different teaching position. (*See* Docket #36 at 13-27). For her part, Cole suggests that this reassignment request stemmed from Cole's "stress" and, presumably major depression. (Docket #26 at 19). In any case, the District's duty to accommodate Cole's request for reassignment based on her disabilities was not triggered until she informed the District, with proper corroborating evidence, of the necessity of this accommodation. *See Ekstrand*, 583 F.3d at 976. The parties not only dispute when this was accomplished, but they also dispute whether this request to transfer remained outstanding thereafter. (Docket #39 ¶ 41).

In addition, the third element of a Cole's reasonable accommodation claim—whether the District failed to reasonably accommodate her disabilities—is undoubtedly in dispute. (Docket #27 at 6). The District does

Page 13 of 17

Case 2:14-cv-01546-JPS   Filed 04/11/16   Page 13 of 17   Document 47

At this juncture, there remains a significant number of disputed material facts in this case. As a threshold matter, the District states that it does not dispute the first and second elements of Cole's prima facie failure to accommodate claim. (Docket #27 at 6); *see also Dunderdale*, 807 F.3d at 853. However, based on the parties briefs, there does appear to be some dispute as to when the District's duty to accommodate Cole's disabilities attached. (*Compare* Docket #27 at 6 (stating that the District does not contest that it was "aware" of Cole's disabilities) *with* Docket #27 at 9 (explaining that as of November 8, 2012, the District was neither aware of the specific accommodations that Cole was requesting nor the specific reason for those accommodations) *and* Docket #36 at 19 (arguing that the District's duty to reassign the plaintiff attached as early as September of 2012)).

It is important to note here that Cole suffers from two disabilities, diabetes and major depression. (Docket #26 ¶¶ 10-11). And, the thrust of her failure to accommodate claim relates to the District's failure to reassign Cole to a different teaching position. (*See* Docket #36 at 13-27). For her part, Cole suggests that this reassignment request stemmed from Cole's "stress" and, presumably major depression. (Docket #26 at 19). In any case, the District's duty to accommodate Cole's request for reassignment based on her disabilities was not triggered until she informed the District, with proper corroborating evidence, of the necessity of this accommodation. *See Ekstrand*, 583 F.3d at 976. The parties not only dispute when this was accomplished, but they also dispute whether this request to transfer remained outstanding thereafter. (Docket #39 ¶ 41).

In addition, the third element of a Cole's reasonable accommodation claim—whether the District failed to reasonably accommodate her disabilities—is undoubtedly in dispute. (Docket #27 at 6). The District does

not argue that Cole's requested accommodation of transfer was per se "unreasonable"—it had, after all, offered to transfer Cole at least three times during the relevant time period. (*See* Docket #27 #40); *see also Barnett*, 535 U.S. at 401. However, it does argue that: (1) the accommodations provided by the District satisfied its duty to "enable" Cole to "to perform the essential functions of" her job; and (2) that it had no duty to reassign Cole to a different position because either there were no positions available for the transfer, Cole was not qualified for the positions that were available, or that Cole had rejected her opportunities to transfer. (Docket #27).

Numerous issues of fact underlie the District's arguments. First, the District ignores the crux of Cole's claim: that the failure to transfer Cole out of special education exacerbated her disabilities to the point of mental breakdown. (Docket #27, #40). Thus, there exists an issue of fact as to whether the multiple accommodations offered by the District did indeed satisfy its obligations under the ADA. *See Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 934 (7th Cir.1995) ("If the disability affects the employee's work ability, the employer must then consider if a 'reasonable accommodation' can be made."). Second, the plaintiff claims that during the transition from the 2012/2013 to the 2013/2014 school year there were numerous available positions for which she was qualified and not considered. (Docket #36, Ex. 2 ¶ 42). Though the District was undoubtedly not required to promote Cole as part of its efforts to accommodate her, *Dalton v. Subaru-Isuzu Auto., Inc.*, 141 F.3d 667, 679 (7th Cir. 1998), the Court cannot determine whether the District's placement efforts were appropriate given the parties' disputes about: (1) whether the plaintiff could have been accommodated through various part-time positions; (2) whether Cole stated that she should not be considered for middle school positions; and, (3) whether Cole's certifications

imposed a genuine barrier to her teaching options. (Docket #36 at 21). Moreover, Cole claims that of the three positions she was "offered," she had been rejected for at least one, a process which seems inconsistent with the reassignment procedure followed by the District when it transferred Cole for the 2011/2012 school year.[8] (Docket #36, Ex. 2 ¶¶ 7-8, 67, 76). Based on these facts, the Court remains unclear as to what other factors, if any, played into the calculus of determining whether (and how) to transfer Cole to a different teaching position within the District. And, only with a more complete picture of these facts, can the Court properly evaluate whether the District's purported referral of Cole to the public job posting site, WECAN, was proper. *Cf. Dunderdale*, 807 F.3d at 857 ("Furthermore, it was Dunderdale's duty to search Skynet for job openings while he was receiving benefits on EIS, and his failure to do so does not establish that United failed to reasonably accommodate his disability.").

It also remains unclear as to who is to blame for the seemingly multiple breakdowns in communications between the parties. *Cf. E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 806 (7th Cir. 2005) (An "employer may not simply reject it without offering other suggestions or at least expressing a

---

[8]The District makes a valid argument that Cole's rejection of transfer opportunities may effect whether its efforts to accommodate her were reasonable. *See Schmidt v. Methodist Hosp. of Indiana, Inc.*, 89 F.3d 342, 344-45 (7th Cir. 1996) (concluding that a plaintiff's failure to accept reasonable accommodations "render[ed] him unqualified under the ADA.") (citing 29 C.F.R. § 1630.9(d)). Here, however, it is unclear whether: (1) Cole's rejection of the Bradford High School position matters in light her apparent "acceptance" of the Lakeview Technology Academy position; and (2) the Bradford High School, Lakeview Technology Academy, and ITHSA reassignment opportunities were indeed first and only available transfer positions available to Cole. Thus, the Court cannot decide on the current record what effect Cole's rejections have on her claim.

willingness to continue discussing possible accommodations."). On the one hand, Cole claims that the District frequently failed to respond to her many requests for accommodations and information, which includes the period of time in which she was alleged "forced" to take administrative and medical leave. (Docket #36 at 17-18). On the other hand, the District maintains that it consistently responded to Cole's requests with all of the information that it was able to provide at the given time. (Docket #39 ¶¶ 50, 56, 59). Without further factual development on the extent of the parties' communication efforts and the motivations behind—and terms of—Cole's leaves of absence, the Court cannot fairly assign responsibility for the purported breakdown in the interactive process between Cole the District. *Ekstrand*, 583 F.3d at 976.

With respect to Cole's retaliation claim "[t]he ADA prohibits employers from retaliating against employees who assert their right under the act to be free from discrimination." *Dickerson v. Bd. of Trustees of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011) (citing 42 U.S.C. § 12203(a)). A plaintiff can establish a valid case of retaliation using either the direct or indirect method of proof. *See Kersting v. Wal–Mart Stores, Inc.*, 250 F.3d 1109, 1117 (7th Cir.2001). "To establish a case of retaliation under the direct method of proof, a plaintiff must show (1) she engaged in a statutorily protected activity; (2) she suffered an adverse action; and (3) a causal connection between the two." *Casna v. City of Loves Park*, 574 F.3d 420, 426 (7th Cir. 2009).

Cole claims that her request to transfer was not satisfied in retaliation for her requests for reasonable accommodations and her EEOC complaints. (Docket #36 at 27). Both the manner in which Cole was allegedly encouraged to withdraw her EEOC complaint and the various emails exchanged between District employees indeed suggest that Cole's requests may not have been

handled promptly due to her "history" with the District. (Docket #36 at 27-28). Thus, the Court cannot fairly dispose of this claim before trial.

4. CONCLUSION

In sum, the Court concludes that there are genuine issues of material fact with respect to Cole's claim for a reasonable accommodation and for her claim of retaliation under the ADA and the Rehabilitation Act. Therefore, the District's motion for summary judgment pursuant to Rule 56 (Docket #25) will be denied.

Accordingly,

IT IS ORDERED that the District's motion for summary judgment (Docket #25) be and the same is hereby DENIED; and

IT IS FURTHER ORDERED that Cole's motion to file a surreply (Docket #46) be and the same is hereby DENIED.

Dated at Milwaukee, Wisconsin, this 11th day of April, 2016.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge